UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Robert L. Goldman,<br><br>    Plaintiff<br><br>v.<br><br>Vigilant Insurance Company,<br><br>    Defendant | Case No.: 2:19-cv-02227-JAD-BNW<br><br>**Order Granting Vigilant's Motion for Summary Judgment in Part and Dismissing Action without Prejudice**<br><br>[ECF No. 33] |

    This is an insurance-coverage dispute related to a water leak at a property that Robert Goldman rented out to his company for business use.  During the adjusting process, Goldman took the position that Vigilant Insurance Company's bad-faith claim-handling practices rendered it equitably estopped from enforcing its rights under the policy to require him to submit to an examination under oath and provide additional documentation of his loss.  And although the policy contains a "legal action against us" clause that precludes the insured from bringing suit without having complied with all policy conditions, Goldman filed this action without first satisfying those requirements.  Vigilant moves for summary judgment, arguing that Goldman's failure to comply with myriad policy conditions voids coverage and bars this suit.  I find that there is no genuine dispute that Goldman refused to comply with the examination-under-oath provision and that Vigilant did not waive that right nor was it equitably estopped from enforcing it, and the "legal action against us" clause prevented him from bringing this suit until he complied.  So I grant Vigilant's motion for summary judgment on this basis and dismiss this suit without prejudice.

# Background[1]

## I. Insured property

Vigilant[2] insured a property in Las Vegas owned by Goldman that has at least two structures: a main house and a guest house.[3] Goldman, who lives in California, let the property out to his company Cels Enterprises to use for storage and to house employees during local tradeshows.[4] The lease agreement began in 2008 and was set to expire in 2017.[5]

## II. The Vigilant insurance policy

Goldman's homeowners' policy with Vigilant provided (1) property-damage coverage for "all risk of physical loss" and (2) loss-of-use coverage for the property's "fair rental value" if "a covered loss ma[de] part of [the] house . . . [that] [Goldman] usually rent[ed] to others uninhabitable."[6] The policy further recounts that Vigilant was providing the coverage "in return for [Goldman's] premium and compliance with the policy conditions."[7]

Two of those conditions are the focus of this motion: the examination-under-oath condition and the "legal action against us" clause. The examination condition obligates Goldman to sit for an examination under oath as often as Vigilant reasonably requires and to provide additional requested documentation[8]:

---

[1] The facts in this section are undisputed unless otherwise stated.

[2] Vigilant is a member of the Chubb Group of Insurance Companies and is often referred to elsewhere as "Chubb." ECF 24 at ¶ 4 (Vigilant's answer to the amended complaint).

[3] ECF No. 33 at 5; ECF No. 33-2; ECF No. 79 at 3. The parties do not dispute that the policy was in effect at the time of the loss.

[4] ECF No. 65-21 at 2.

[5] *Id.*; ECF No. 66-2 at 2.

[6] ECF No. 33-2 at 32, 37 (the insurance policy).

[7] *Id.* at 30.

[8] *Id.*

2

> **Examination under oath.** We have the right to examine separately under oath as often as we may reasonably require you, family members and any other members of your household and have them subscribe the same. We may also ask you to give us a signed description of the circumstances surrounding a loss and your interest in it, and to produce all records and documents we request and permit us to make copies.

This provision is nested under the larger, "Your duties after a loss" section, which lists Goldman's obligations in the event of "a loss th[e] policy may cover."[9] The legal-action clause is contained in a separate "Special Conditions" section. It requires Goldman to comply with all conditions of the policy before bringing a lawsuit against Vigilant[10]:

> **Legal action against us**
> You agree not to bring legal action against us unless you have first complied with all conditions of this policy. For property, you also agree to bring any action against us within one year after a loss occurs, but not until 30 days after proof of loss has been submitted to us and the amount of loss has been determined.

### III.   The coverage dispute[11]

In 2016, Goldman submitted a property-damage claim against the policy related to a water leak under the slab of the guest house.[12] The claim was complex, and Vigilant's investigation into it involved geotechnical and structural engineering experts hired by both Goldman and Vigilant to perform forensic evaluations and testing of the structure and soils.[13]

Before that claim file was closed, on January 5, 2017, Goldman submitted an additional claim under the policy for damage to the main house.[14] Later that same month, Vigilant responded with a reservation-of-rights letter stating, among other things, that no waiver or

---

[9] *Id*. at 59.

[10] *Id*. at 60.

[11] I focus on the facts that relate to Goldman's loss-of-use claim and refusal to comply with the examination-under-oath provision because they are dispositive.

[12] ECF No. 23 at ¶ 11 (amended complaint).

[13] *Id*. at ¶ 12–25.

[14] *Id*. at ¶ 26; ECF No. 64-04.

3

estoppel was intended or should be inferred.[15] Over the next three years, though Vigilant paid out some benefits for this property-damage claim, the parties and their experts continued to dispute the extent of the property damage and the necessary repairs.[16]

While negotiating that main-house, property-damage claim, Vigilant sent Goldman a letter in May 2017, reminding him of the loss-of-use coverage his policy afforded "during the period of restoration" due to its understanding that the property "house[d] sales staff, employees, and people attending trade shows" and that "the home may not be available" for those guests "once the repairs start[ed]" on the main and guest residences.[17] In February of the next year, Goldman submitted a loss-of-use claim for rental income he claimed he was no longer receiving from Cels since the leak, and he also submitted a summary of damages and lease agreements with Cels.[18]

That same month, Goldman inspected the property with Willie Mack, the first of Vigilant's claim representatives who was assigned to his case.[19] Mack received the initial proof-of-loss documentation and requested no further information,[20] and his files included a note reminding himself to "resolve issues related to the loss[-]of[-]use claim."[21] In April 2018, the parties discussed the loss-of-use claim,[22] and Vigilant's internal files suggest that it was

---

[15] ECF No. 64-29 at 4.
[16] ECF No. 67-9 at 2.
[17] ECF No. 65-18.
[18] ECF Nos. 65-20, 65-21, 65-22, 65-23, 65-24.
[19] ECF No. 33-15 at 2.
[20] ECF No. 64-2 at 193:12–194:5.
[21] ECF No. 65-26.
[22] ECF No. 33-15 at 11–13.

4

investigating the claim in May.[23] Those files reflect that the lease agreement with Cels was for "business use[] and use for employees staying in the home for local trade shows" and that Vigilant's representative explained to Goldman that the home "was never uninhabitable."[24] Mack left his employment with Vigilant the next month.

Nearly a year later, on May 3, 2019, Goldman's counsel emailed Vigilant an official demand under Nevada's Unfair Claims Practices Act for loss-of-use damages, and he also promised to send "outstanding documents previously requested."[25] Vigilant, through newly assigned adjuster Tommy Le, responded eleven days later, disputing the damages and asking for an updated lease and other information to support the loss-of-use claim,[26] at least some of which Goldman provided later that month.[27] At this time, the parties were disputing the fair market rental value of the property, with Vigilant pegging it at $12,500/month and Goldman estimating it at a much higher $25,000/month, although the lease agreement itself set the rent at $10,000/month.[28] Around the same time, Vigilant left a voicemail asking to discuss "a piece or an aspect of the claim" with the attorney for Goldman and his company.[29] Over the next two months, the parties attempted to schedule that call, but after proposing dates for the call, Vigilant said it needed more time to review the loss-of-use claim.[30]

---

[23] *Id.* at 7.
[24] *Id.*
[25] ECF No. 65-27.
[26] ECF No. 65-28.
[27] ECF No. 66-2.
[28] *Id.*
[29] ECF No. 65-9 at 137:24–138:4.
[30] ECF No. 66-5 at 2–3.

On July 29, 2019, Goldman reiterated his demand for loss-of-use damages,[31] and Vigilant responded that it was still reviewing the claim.[32] Goldman followed up one month later, again demanding damages and this time accusing Vigilant of violating several insurance regulations, rendering it "equitably estopped from denying" the loss-of-use claim.[33] On September 6, 2019, Le responded that Vigilant was still investigating the loss-of-use and property-damage claims and explained that the ongoing investigation into the scope of damages and repairs for the property-damage claim would impact the loss-of-use claim.[34] In that letter, Vigilant requested fourteen categories of information and documents, including "documents reflecting payment of [rent]," "documents evidencing deposits . . . of any rent," and information about when and how the property was used to house staff and store items.[35] The letter also advised Goldman that "[i]t is likely that once these documents and this information can be reviewed and followed up on, it will be necessary to take [e]xaminations [u]nder [o]ath."[36] In November 2019, Vigilant reached out to Goldman's counsel to schedule those examinations of both Goldman and his wife.[37]

It is undisputed that Goldman has since refused to provide the additionally requested documents or allow the examinations under oath because Goldman relied—and continues to rely—on his position that Vigilant waived, or is equitably estopped from asserting, its right to

---

[31] ECF No. 66-6.
[32] ECF No. 66-7 at 2.
[33] ECF No. 66-8.
[34] ECF No. 66-9.
[35] *Id.* at 5–6.
[36] *Id.* at 7.
[37] ECF No. 33-36 at 4.

enforce those policy conditions or further investigate the claim.[38]  Instead, Goldman filed this lawsuit just after Christmas 2019,[39] and he asserts claims for declaratory relief, breach of contract, bad faith, and violations of Nevada's Unfair Claims Practices Act.[40]  On February 11, 2020, Vigilant issued a written denial of coverage on "any remaining aspects of the claim[,] subject to reconsideration should [Goldman] change [his] position and decide to comply with" his duties under the policy, particularly his obligations to "produce documents . . . and give [e]xaminations [u]nder [o]ath."[41]

## Discussion[42]

Vigilant moves for summary judgment on all claims, arguing that Goldman's failure to comply with the examination-under-oath condition and various other policy provisions "voided all coverages" and that his suit is barred in its entirety because he violated the policy's legal-action clause by suing before he satisfied the examination-under-oath condition.[43]  Goldman responds that the doctrines of waiver and equitable estoppel preclude Vigilant from enforcing

---

[38] ECF No. 33-30; ECF No. 33-31; ECF No. 33-32; ECF No. 33-33; ECF No. 33-34; ECF No. 33-35; ECF No. 33-3 at 7–9 (Goldman dep. at 73–78).

[39] ECF No. 1 (complaint).

[40] ECF No. 23 (amended complaint).  Although Goldman originally pled negligence-based claims, too, *see* ECF No. 1 at 25–28, he abandoned them in his amended complaint.

[41] ECF No. 33-38 at 2.

[42] Vigilant moves to strike Goldman's counsel's revised three-page declaration because it contains facts and arguments that should have been incorporated into his revised response.  ECF No. 33 at 3.  I previously ordered Goldman to incorporate the substantive argument in his counsel's original 44-page declaration into his response brief because Local Rule 7-3(a) limits summary-judgment responses to 30 pages and so inherently requires substantive argument to be presented within the four corners of the response.  ECF No. 78.  While I deny Vigilant's request because it failed to file a separate motion as required by Local Rule IC 2-2(b), I again caution Goldman's counsel not to abuse a declaration or footnotes as vehicles for extraneous arguments.

[43] ECF No. 33 (motion for summary judgment).  I find this motion suitable for disposition without oral argument.  L.R. 78-1.

these provisions.[44]  Because I find that the record establishes without genuine dispute that Goldman did not comply with the examination-under-oath condition before bringing this action, putting him in violation of the policy's legal-action clause, and Goldman has not identified any issue of fact to support his waiver or equitable-estoppel theories under Nevada law, I grant Vigilant's motion in part and dismiss this action without prejudice to Goldman's ability to later refile it.[45]  And because I dismiss this entire suit on this basis, I need not and do not reach Vigilant's remaining arguments.

**I.     The legal-action clause is a condition precedent to bringing suit.**

The Nevada Supreme Court has held that "absent some countervailing reason, contracts will be construed from the written language and enforced as written"[46] and that, to recover under a contract, a party must show that it has satisfied conditions precedent.[47]  The party enforcing a condition precedent does not have to show that it was prejudiced in order for it to avoid responsibility for coverage.[48]

The legal-action clause in the Vigilant policy is a condition precedent—not to coverage, but to filing a lawsuit.  It plainly and broadly bars an insured from "bring[ing] legal action against" the insurer "unless [the insured] ha[s] first complied with all conditions of th[e] policy."[49]  Both the Nevada Supreme Court and the Ninth Circuit have held such provisions to

---

[44] ECF No. 79 at 27 (Goldman's response to the summary-judgment motion).

[45] This ruling is not a conclusion that such a suit would be timely or otherwise valid.

[46] *Ellison v. California State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990).

[47] *Clark Cnty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 95 n.21 (Nev. 2007).

[48] *S.B. Corp. v. Hartford Acc. & Indem. Co.*, 1996 WL 632514, **2–4 & n.9 (9th Cir. 1996) (unpublished) (evaluating Nevada law).

[49] ECF No. 33-2 at 60.

be unambiguous conditions precedent.[50] And judges in this district have routinely disposed of coverage-related actions based on similar legal-action clauses.[51] I find that the legal-action clause in Goldman's Vigilant policy is a condition precedent to bringing suit, and it barred Goldman from bringing this action unless he first complied with all other conditions in the policy or was excused from doing to based on waiver, estoppel or equitable tolling.[52]

---

[50] *See Las Vegas Star Taxi, Inc. v. Saint Paul Fire & Marine Ins. Co.*, 714 P.2d 562, 563 (Nev. 1986); *Keller v. Fed. Ins. Co.*, 765 Fed. Appx. 271, 272 (9th Cir. 2019) (unpublished) (finding identical legal-action clause to be enforceable condition precedent to suit).

[51] *See, e.g., Holland v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1268712, at *5 (D. Nev. Mar. 27, 2014) (holding that "[t]he fact that [the insured] initiated this lawsuit against State Farm before complying with the cooperation provisions bars this lawsuit"); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2197370, at *7 (D. Nev. July 23, 2009) (refusal to submit to an IME); *Cuadros v. State Farm Fire & Cas. Co.*, 2014 WL 7338945, at *4 (D. Nev. Dec. 23, 2014) (dismissing action because insured failed to comply with appraisal provision and "the policy's 'legal action against us' provision bars suit until the parties have complied with all terms of the policy").

[52] *See, e.g., Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (noting that failure to comply with regulatory condition precedent to bringing suit is fatal to claim absent waiver, estoppel, or equitable tolling); *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (noting that EEOC charge-filing "exhaustion requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling").

Citing no authority, Goldman asserts that Vigilant is equitably estopped from enforcing the legal-action clause because of its bad-faith conduct and because it raised the clause only after the parties "engaged in multiple years of negotiations," including in the months before Goldman filed suit. ECF No. 79 at 27. But Goldman has not shown detrimental reliance as necessary to establish equitable estoppel. The record also does not support a finding that Vigilant waived the clause; indeed, it would make no sense for Vigilant to assert the clause before Goldman filed suit since that clause had no relevance until he filed suit, and Goldman points to nothing that could lead him to reasonably believe that Vigilant relinquished its right to require him to comply with the policy's conditions before filing suit.

**II.      Goldman's refusal to comply with the examination-under-oath condition prevented him from satisfying the legal-action condition precedent.**

### *A.     Goldman violated the examination-under-oath provision.*

The examination-under-oath provision is plainly a condition of the policy. It is contained within the policy's "Your duties after a loss" section that explained, "[i]f you have a loss this policy may cover, you must perform these duties."[53] In *Las Vegas Star Taxi, Inc. v. Saint Paul Fire & Marine Insurance Company*, the Nevada Supreme Court found a similarly situated provision to be unambiguously a condition that the insured was required to comply with.[54] And, as Vigilant notes, other judges in this district have relied on *Las Vegas Star Taxi* in granting summary judgment in favor of insurers when insureds have failed to comply with conditions precedent.[55]

There is no genuine dispute that Goldman was not in compliance with this condition precedent when he filed this lawsuit. The record demonstrates unequivocally that Vigilant requested to schedule the examination of both Goldman and his wife via letter dated November

---

[53] ECF No. 33-2 at 30, 59.

[54] *Las Vegas Star Taxi*, 714 P.2d at 563.

[55] *See, e.g., Auriemma v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4157312, at **5–7 (D. Nev. Aug. 3, 2016) (granting summary judgment for State Farm because its insured violated a cooperation provision by failing to return medical forms after repeated requests); *S.B. Corp. v. Hartford Acc. & Indem. Co.*, 880 F. Supp. 751, 754–58 (D. Nev. 1995) (holding, on a motion for summary judgment, that insurer did not owe defense or indemnity to its insured in an underlying suit because the insured violated a notification provision by waiting eight months to notify the insurer of counterclaims), *aff'd* 100 F.3d 964 (9th Cir. 1996); *Valentine v. State Farm Mut. Auto. Ins. Co.*, 105 F. Supp. 3d 1176, 1180–84 (D. Nev. 2015) (granting summary judgment to auto insurer based on a policy provision that required the insured to provide medical records because the insured signed an authorization for such records only after six requests from the insurer).

7, 2019,[56] and again in a November 20, 2019, email.[57] But Goldman refused that request based on his assertion that Vigilant was equitably estopped from further investigating the loss-of-use claim due to its improper investigation. Goldman does not deny this, and acknowledged in deposition that he "made the conscious decision we're not going to sit for the examination under oath."[58] He did so "[w]hen [he] received the notice and conferred with [his] attorney."[59]

### B.  Vigilant is not equitably estopped from enforcing the examination provision because Goldman cannot show detrimental reliance.

#### 1.  Equitable estoppel requires proof of detrimental reliance, which requires an act or change of position in reliance on the other party's conduct.

Goldman argues that Vigilant had—and has—no right to enforce the examination-under-oath condition against him because its bad-faith claims-handling process rendered Vigilant equitably estopped from doing so.[60] The doctrine of equitable estoppel prevents a party from "assert[ing] legal rights that[,] in equity and good conscience[,] should not be available due to a party's conduct."[61] It applies when "unconscionable injury would result from denying enforcement of the contract after one party has been induced by the other [to seriously] change his position in reliance on the contract."[62] Whether equitable estoppel applies is "generally a

---

[56] ECF No. 33-36 at 4 (November 7, 2019, letter).

[57] ECF No. 33-37 at 2 (November 20, 2019, email).

[58] ECF No. 33-3 at 78:6–9 and 80:5–81:4 (Goldman depo.).

[59] *Id.* at 80:20–24.

[60] ECF No. 79 at 24–26. Although the estoppel argument is Goldman's principal legal theory, he relegates his entire legal argument in this regard to footnote 69 in his response. *See id.* at 25 n.69. "Arguments raised only in footnotes, or only on reply, are generally deemed waived" and need not be considered. *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014). But I nevertheless address the merits of this argument.

[61] *In re Harrison Living Tr.*, 112 P.3d 1058, 1061–62 (Nev. 2005) (quoting *Topaz Mutual Co. v. Marsh*, 839 P.2d 606, 611 (Nev. 1992)).

[62] *Goldstein v. Hanna*, 635 P.2d 290, 293 (Nev. 1981).

11

question of fact" but is a question of law "when only one inference can be drawn from the facts."[63] And if a party has a duty to speak, "silence can raise an estoppel quite as effectively as can words."[64] In Nevada, a party must prove four elements to trigger equitable estoppel: (1) "the party to be estopped must be apprised of the true facts"; (2) "that party must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended"; (3) "the party asserting estoppel must be ignorant of the true state of the facts"; and (4) "the party asserting estoppel must have detrimentally relied on the other party's conduct."[65]

As to the fourth element, the Nevada Supreme Court has held that "[a] promisor will only be liable for conduct intended to induce reliance on a promise 'if the action induced amounts to a substantial change of position.'"[66] That holding comes from a case involving *promissory* estoppel, but the elements of both estoppel claims are the same.[67] Other opinions from the Court suggest that, in the estoppel context generally, detrimental reliance exists only if a party acts or substantially changes its position in reliance on the other party's conduct. In *Merrill v. DeMott*, for example, the Court rejected the argument that a lessor could not claim his lease was invalid because he did not alter his position in detrimental reliance on the lessees' conduct.[68] The Court reasoned that the lessor took the property off the market to negotiate the lease, kept it off the

---

[63] *In re Harrison Living Tr.*, 112 P.3d at 1061.

[64] *Goldstein*, 635 P.2d at 292.

[65] *Las Vegas Convention & Visitors Auth. v. Miller*, 191 P.3d 1138, 1157 (Nev. 2008).

[66] *Torres v. Nev. Direct Ins. Co.*, 353 P.3d 1203, 1210 (Nev. 2015) (citing 28 Am. Jur. 2d Estoppel and Waiver § 51 (2011)).

[67] *Compare Torres*, 353 P.3d at 1209 (citing 28 Am. Jur. 2d Estoppel and Waiver § 51 (2011)), *with Las Vegas Convention*, 191 P.3d at 1157.

[68] *Merrill v. DeMott*, 951 P.2d 1040 (Nev. 1997).

market while the lessees possessed the property, and leased adjacent land for the lessees' potential business to use as parking; it concluded that "each of these actions constituted detrimental reliance."[69] By countering the lack-of-detrimental-reliance argument with examples of actions the lessor took in view of the lease, the Court implicitly held that a party proves detrimental reliance with actions taken in reliance on the other party's conduct. In other cases too, the Court has consistently found equitable estoppel if a party acts or "seriously [] change[s] his position in reliance" on the other party's conduct.[70] So, for equitable estoppel to apply in Nevada, the party asserting it must have changed its position or otherwise acted in reliance on the other party's conduct.

### 2. Goldman has not demonstrated that he acted or changed position in reliance on Vigilant's conduct.

Goldman offers no action or change of position in reliance on his expectation that Vigilant would process his claim without requesting an examination under oath. He does not argue, and the record does not suggest, for instance, that he refrained from canceling his policy in reliance on the expectation that Vigilant would not request an examination. Nor does he argue, or present facts showing, that he did not renew the lease with his company based on

---

[69] *Merrill,* 951 P.2d at 1044.

[70] *Goldstein*, 635 P.2d at 293 (potential condo buyers refrained from exercising an option to purchase until a later date in reliance on the owner's agent's statement that the buyers could exercise their option later); *see Mahban v. MGM Grand Hotels, Inc.*, 691 P.2d 421, 424 (Nev. 1984) (retailer bought merchandise for a store in reliance on a letter stating that the lease for the store would not be terminated); *Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 655 P.2d 996, 999 (Nev. 1982) (contractor paid for union benefits that a sub-contractor was obligated to, but failed to, fund because the union knew, but failed to disclose, that the sub-contractor wasn't funding the benefits); *NGA #2 Liab. Co. v. Rains*, 946 P.2d 163, 168 (Nev. 1997) (potential real-estate buyer spent time and money on a property); *Alpark Distrib., Inc. v. Poole*, 600 P.2d 229, 231 (Nev. 1979) (couple moved to another city to start a business in reliance on a landowner's representations); *S. Nevada Mem'l Hosp. v. State, Dep't of Hum. Res.*, 705 P.2d 139, 143 (Nev. 1985) (hospital spent money in reliance on the government's conduct).

Vigilant's conduct. In fact, the lease would have naturally ended at the end of 2017—before Goldman even made the loss-of-use claim to Vigilant in February 2018—so the lease non-renewal does not demonstrate detrimental reliance.[71]

Rather than pointing to such an act or change of position, Goldman conjectures that Vigilant "concocted" its examination-condition argument to "divert attention away from" its untimely, misleading, and unfair claims-handling process.[72] Goldman contends that Vigilant accepted his loss-of-use submission as fully compliant; requested the examination under oath only after Goldman advised the insurer that it was equitably estopped from further investigation; and did not need "extensive additional documentation."[73] As evidence of these theories, Goldman notes that Vigilant's first adjuster, Mack, received the initial loss-of-use proof, didn't request additional proof, and had a note in a to-do list to "resolve issues related to the loss[-]of[-]use claim."[74]

But none of these facts reasonably leads to the inference that Vigilant accepted the claim. The fact that Goldman advised Vigilant that he believed it was equitably estopped from further investigation does not establish that Vigilant was, in fact, equitably estopped. Whether Vigilant needed extensive additional documents or none at all is irrelevant to whether it still required Goldman to submit to an examination under oath. And although some of these assertions may go to other elements of equitable estoppel, Goldman makes scant effort to explain how they satisfy the detrimental-reliance element; he merely states in a conclusory footnote that "he relied

---

[71] ECF No. 66-2 at 2; ECF No. 65-20.
[72] ECF No. 79 at 26.
[73] *Id.*
[74] ECF No. 79-13 n.42, n.43; ECF No. 66-20 at 193:12-194:05; ECF No. 65-26.

to his detriment that Vigilant would fulfill its obligations."[75]  Because Goldman has not shown that he detrimentally relied on Vigilant's conduct, he has not established that Vigilant was equitably estopped from requiring him to satisfy the examination-under-oath condition in the policy.

The cases that Goldman cites in his brief do nothing to strengthen his position.  In *In re Harrison Living Trust*, the Nevada Supreme Court held that a beneficiary was equitably estopped from disputing how trust assets were distributed after her attorney drafted the proposed order that prompted the distribution and she waited eighteen months to challenge the distribution.[76]  The Court concluded that equitable estoppel applied because the trustee "justifiably relied on the distribution order" drafted by the beneficiary's attorney in distributing the funds and the beneficiary "consciously decided to accept her share of the [t]rust assets" rather than challenge the order from the start.[77]  But here, Vigilant does not dispute the funds it already distributed for the property damage.  And whereas the *Harrison* trustee took an action in reliance on the estopped party's conduct by distributing the funds, Goldman points to no action he took in reliance on his belief that Vigilant would not request an examination.

The facts of *Topaz Mutual Company v. Marsh* are even less analogous.  In *Marsh*, the Court held that equitable estoppel allowed a privately owned public utility's lender to seek recovery beyond the regulatory limit because the utility defrauded the lender by telling it falsely

---

[75] ECF No. 79 at 25 n.69.  Goldman claims that Vigilant's "conduct evinces a conscious and calculated attempt to place its own interests above that of its insured and, in so doing, a knowing and intentional violation of the parties' insuring agreement, Vigilant's duty of food faith and fair dealing, and multiple statutory violations." ECF No. 79 at 26.  If Goldman means to assert a separate defense beyond equitable estoppel or waiver, he does not explain what that defense is or develop it in a way that merits its analysis here.

[76] *In re Harrison Living Tr.*, 112 P.3d at 1062.

[77] *Id*. at 1062.

15

that the regulatory agency approved the agreement for the full amount of the loan.[78]  The Court explained that, "when a party acts in bad faith and with an intent to defraud, it can be estopped from challenging the enforceability of a contract executed because of that conduct."[79]  Because the lender "acted to her detriment in reliance on the misrepresentations by the [utility], and it was represented to her that [regulatory] approval had been obtained," the Court held that "the principle of equitable estoppel applies to prevent [the utility] from now asserting that the contract is voidable."[80]  But Goldman offers no evidence that Vigilant defrauded him into executing the contract or agreeing to the conditions precedent.  And while the *Marsh* lender took an action (by issuing the check and entering the agreement) in reliance on the other party's conduct, Goldman makes no similar showing here.  So *Harrison* and *Marsh* do not support a finding that Vigilant is or was equitably estopped from enforcing the examination-upon-oath condition against Goldman.

### C. *Vigilant did not waive the examination-under-oath condition because it did nothing to lead Goldman to reasonably believe it would not ask for one.*

Goldman also argues that Vigilant, by its conduct, waived the examination provision so it can no longer enforce it in this litigation.[81]  A party waives its ability to enforce a contract term when it intentionally relinquishes a known right.[82]  Waiver requires conduct that shows intent to waive a right or that is inconsistent with any other intention than to waive that right.[83]  For intent

---

[78] *Topaz Mutual Co. v. Marsh*, 839 P.2d 606, 612 (Nev. 1992).
[79] *Marsh*, 839 P.2d at 611.
[80] *Id.*
[81] ECF No. 79 at 26.
[82] *Mahban*, 691 P.2d at 423.
[83] *Id.*

16

to be inferred, the "conduct must clearly indicate the party's intention" and must be "so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished."[84]

Two key waiver decisions by the Nevada Supreme Court illustrate the type of conduct necessary to establish waiver. In *Nevada Yellow Cab Corporation*, Court held that a party did not waive its right to file a motion to disqualify its adversary's counsel by waiting two years to file the motion because the party did not show a "clear intent to relinquish its right to challenge."[85] Rather, it initially asked the potentially conflicted counsel to withdraw but held off on filing a motion while the parties were mediating and specifically said it would file the motion if mediation failed.[86] In *Mahban v. MGM Grand Hotels, Inc.*, by contrast, the Court concluded that it was for a jury to decide whether a landlord waived its ability to terminate a lease after a fire damaged the property because the landlord sent the lessee a post-fire letter asking for reconstruction plans before it then tried to terminate the lease.[87] The Court reasoned that the letter could "be read to have encouraged acts or evidenced intent inconsistent with the termination of the lease."[88]

Goldman relies on *Thompson v. Allstate Insurance Company*, an opinion from another judge in this district, to argue that Vigilant waived its right to enforce the policy's terms against him.[89] Thompson was involved in a car accident, submitted an insurance claim for a back injury,

---

[84] *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 152 P.3d 737, 740 (Nev. 2007).
[85] *Id.*
[86] *Id.*
[87] *Mahban*, 691 P.2d at 424.
[88] *Id.*
[89] *Thompson v. Allstate Ins. Co.*, 431 F. Supp 3d 1163 (D. Nev. 2019).

17

then sued her insurer Allstate after it stopped paying for her treatment. Allstate moved for summary judgment on the grounds that Thompson violated a policy provision that required her to cooperate with the insurer's investigation because she failed to disclose preexisting back problems. The court denied summary judgment, reasoning that a jury could find that Allstate waived the cooperation condition by paying the insured's medical expenses after it received notice of her preexisting back injury.[90]

To liken his circumstances to Thompson's, Goldman points to three acts that he contends establish Vigilant's waiver: (1) Vigilant did not communicate with him about the loss-of-use claim for a year; (2) Vigilant represented that it needed to follow up on only a limited amount of information; and (3) Vigilant requested the examination under oath only after Goldman took the position that Vigilant was equitably estopped from further investigation.[91] None of these acts, however, legally establishes waiver. The one-year delay is not sufficient because, as the Nevada Supreme Court explained in *Nevada Yellow Cab* when holding that a litigant did not waive a conflict by waiting two years to file the motion to disqualify counsel, "delay alone is insufficient to establish a waiver."[92] Although Vigilant's statement that it needed only limited follow-up information may have been inconsistent with its later request for many additional documents, it was not inconsistent with also requesting an examination under oath such that Goldman reasonably could have believed that the right to conduct that examination had been relinquished. And finally, the timing of Vigilant's request for the examination is of no legal consequence, and Goldman has not identified any authority that would suggest that it is. So Goldman has

---

[90] *Thompson*, 431 F. Supp 3d at 1174.
[91] ECF No. 79 at 26.
[92] *Nevada Yellow Cab Corp.*, 152 P.3d at 740.

identified nothing in the record that could lead him to reasonably believe that Vigilant waived its right to request his examination under oath.

### D. The remedy for Goldman's premature suit is dismissal without prejudice.

Though Vigilant asks for summary judgment based on Goldman's breach of the legal-action clause, I find that dismissal without prejudice is a more suitable remedy. I am persuaded by the reasoning of the District of Oregon in *Gerke v. Travelers Casualty Insurance Company*.[93] Gerke's policy contained examination-under-oath and legal-action conditions similar to Goldman's.[94] The court found the examination provision to be a "condition[] precedent to Gerke's ability to bring suit" and that Gerke was "not in compliance with" that term when he filed suit, so it dismissed the action without prejudice.[95] It reasoned that "Gerke's failure to comply with" the examination-under-oath condition did "not bar his ability to bring suit to recover, but merely suspend[ed] his ability to bring suit until he has fully complied with" the condition.[96] "Accordingly the most appropriate remedy," the court concluded, was "to dismiss the action without prejudice, so that Travelers may conduct the [examination under oath] and determine whether it will pay, deny, or adjust Gerke's claim."[97]

---

[93] *Gerke v. Travelers Cas. Ins. Co. of Am.*, 815 F. Supp. 2d 1190, 1203 (D. Or. 2011).

[94] *Gerke*, 815 F. Supp. at 1194.

[95] *Id*. at 1202–03.

[96] *Id*. at 1202.

[97] *Id*.; *see also Musleh v. State Farm Fire & Cas. Co.*, 2010 WL 11205733 (E.D. Mich. Dec. 13, 2010) (dismissing coverage action without prejudice based on insured's failure to comply with document-production condition precedent), *aff'd*, 485 F. App'x 79 (6th Cir. 2012) (unpublished); *First Nat. Bank of Bryan v. Progressive Cas. Ins. Co.*, 2004 WL 1874995 (S.D. Tex. Aug. 13, 2004) (dismissing coverage action without prejudice to refiling after satisfaction of policy terms).

Goldman has failed to comply with the examination-under-oath provision in his policy and has not shown that this failure is excused by estoppel or waiver. That failure merely suspends his ability to bring suit until he has fully complied. So, like the *Gerke* court, I find that the most appropriate remedy is to dismiss this action without prejudice to Goldman's ability to refile it once Goldman brings himself into compliance with his policy conditions.

## Conclusion

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment **[ECF No. 33] is GRANTED IN PART**: **this action is dismissed without prejudice** based on the plaintiff's failure to comply with conditions precedent to bringing suit.

The Clerk of Court is directed to **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
September 29, 2022